**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CAMILLE WILSON,** | ) **CASE NO: 1:16-cv-00114-DAP** |
| **6327 DELREY AVENUE** | ) |
| **CLEVELAND, OHIO 44128** | ) |
| | ) **JUDGE DAN A. POLSTER** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **(JURY DEMAND ENDORSED** |
| **UNIVERSITY HOSPITALS CASE** | ) **HEREON)** |
| **MEDICAL CENTER** | ) |
| **11100 EUCLID AVENUE** | ) |
| **CLEVELAND, OHIO 44106** | ) |
| | ) |
| **and** | ) |
| | ) |
| **NANCY JOHNSON** | ) |
| **c/o UNIVERSITY HOSPITALS** | ) |
| **11100 EUCLID AVENUE** | ) |
| **CLEVELAND, OHIO 44106** | ) |
| | ) |
| **and** | ) |
| | ) |
| **KATHY DEAKINS** | ) |
| **c/o UNIVERSITY HOSPITALS** | ) |
| **11100 EUCLID AVENUE** | |
| **CLEVELAND, OHIO 44106** | |
| | |
| **Defendants.** | |

---

## AMENDED COMPLAINT

---

Plaintiff, Camille Wilson, by and through the undersigned counsel, for her Complaint

against the Defendants, states as follows:

## PARTIES, VENUE AND JURISDICTION

1.      Plaintiff, Camille Wilson, is a U.S. citizen who at all times material to this action has resided in Cuyahoga County, Ohio.

2.      Her original action was filed in Cuyahoga County Common Pleas Court on December 28, 2015 and assigned to Judge Michael P. Donnelly.

3.      It was thereafter removed from state court to federal court by University Hospitals.

4.      Defendant, University Hospitals Case Medical Center, is, upon information and belief, an Ohio not-for-profit hospital organized under the laws of the State of Ohio.

5.      Proposed Defendant, Nancy Johnson, is, upon information and belief, an employee of University Hospitals.

6.      Proposed Defendant, Kathy Deakins, is, upon information and belief, a supervisor for University Hospitals.

7.      This is an action for damages in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, and § 102 of the Civil Rights Act of 1991 *et seq.*, O.R.C. § 4112.01 *et seq.*, 29 U.S.C. § 2601 *et seq.*, and 29 U.S.C. § 12111 *et seq.*

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims involve the rise on the laws of the United States.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

10.      The Plaintiff has exhausted her administrative remedies, and she has received notice of her right to bring suit by the EEOC

## FACTS COMMON TO ALL COUNTS

**11.**     Camille Wilson is an adult black female.  Defendant University Hospitals is an employer, having thousands of employees; upon information and belief, Nancy Johnson is an employee of University Hospitals; and Kathy Deakins is a supervisor in the same employer.

**12.**     Camille Wilson worked for University Hospitals from approximately 2009 to 2014 in the capacity of an equipment technician and operations assistant in the Pediatric Respiratory Care Department.

**13.**     She applied for her position online and was not able to receive a copy of the last page which purportedly contains the six (6) month statute of limitations which she was not aware of when she signed nor could she print a copy.

**14.**     Camille Wilson filed two charges with the Ohio Civil Rights Commission.  One in October 2014 and the other in January 2015.

**15.**     The 2014 charge involved harassment, retaliation and other events that took place before her termination whereas the 2015 charge involved termination.  Both charges were dual filed with the EEOC.

**16.**     The EEOC issued a right to sue letter which has already been attached to the original Complaint in this case for the 2014 charge, and upon information and belief, issued a right to sue on the 2015 charge while the matter was pending in this Court.

**17.**     In general, the Plaintiff complained that she was harassed because of her race, that she was terminated in retaliation for having complained to the EEOC/OCRC, and that University Hospitals' claim of eliminating her position was a pretext for discrimination, retaliation and harassment, including subjecting her to an illegal medical exam without reasonable suspicion or probably cause as evidenced by the results of the test.

3

18.     At all times Plaintiff worked for University Hospitals, she received good performance reviews and was more than qualified for her position.

19.     Shortly after Plaintiff began working for University Hospitals another employee, Nancy Johnson, a white female, began harassing Camille Wilson on a daily basis.

20.     Johnson said that she was friends with Kathy Deakins; Johnson admitted being a racist, did not like blacks, and referred to Camille Wilson at least once as a "fucking, lying whore".

21.     Johnson's harassment on a regular shift basis consisted of examples such as entering the back storeroom and calling Camille Wilson a black bitch; calling Camille Wilson a black bitch in other places at University Hospitals on numerous occasions; intentionally ignoring University Hospitals' instructions to stay away from Camille Wilson and doing so with impunity over numerous objections and complaints; and entering Camille Wilson's work station and work areas without reason in order to provoke Camille Wilson because she is a racist to get Wilson to quit.

22.     Camille Wilson reported this constant harassment promptly and frequently to supervisor Kathy Deakins as well as the UH Human Resources Department, the University Hospitals Police Department and eventually the EEOC as well as the internal EAP.

23.     Camille Wilson was fearful of Nancy Johnson's harassment which made her work environment and work responsibilities more difficult.  For example, her fear of being harassed led to an occasional error in mixing sterilized chemicals or failing to count supplies properly, and it also humiliated her.

24.     In October 2014, University Hospitals told Camille Wilson that she must submit to a medical health exam at the risk of being found insubordinate.

25.     Camille Wilson undertook the examination only because of the threat.  It demonstrated that Camille Wilson was fit for her job duties, which is borne out by all of Camille Wilson's performance reviews.

26.     Camille Wilson does not believe that the examination was job-related, nor was it consistent with business necessity, and it was designed to further humiliate Camille Wilson into quitting University Hospitals.  More to the point, Camille Wilson believes that her complaint of Nancy Johnson, which Nancy Johnson deviously avoided doing when Kathy Deakins was around, made others perceive her as being mentally challenged or disabled when she was not, as evidenced by the results of the test.

27.     But, Camille Wilson would note that Kathy Deakins friendship with Nancy Johnson colored her perception and Deakins refused to believe the numerous complaints she was lodging against Johnson, which Johnson was ignoring.

28.     In January 2015, University Hospitals notified Camille Wilson that her position was being eliminated as part of a reduction in force.

29.     The RIF panel was made of three people, including Kathy Deakins.

30.     Another panel member was Paula Gillette, Vice President of Nursing, and Patty DePompei, President of Rainbow Hospital.

31.     Camille Wilson contends that the panel members retaliated against the Plaintiff for complaints against University Hospitals and Deakins' friend because they knew of the complaints, she believes the panel felt Wilson's complaints were causing too many problems, and Ms. Deakins knew of Nancy Johnson's racial harassment towards Camille Wilson and her own failure to take proper and complete and appropriate action against Ms. Johnson to remedy the problem of the situation.

**32.** Camille Wilson contends that Deakins' animus affected the panel's decision, notwithstanding Deakins, University Hospitals policy that prohibits employees from having personal relationships with other employees or work in the same department on the same shift.

**33.** Following Camille Wilson's termination in the RIF, they hired two PRNs to cover the position and responsibilities that Camille Wilson was performing.

**34.** University Hospitals made the RIF decision while Camille Wilson was on FMLA leave and waited until she returned to give her the decision.

**35.** She was fired on January 5, 2015.

**36.** During her employment, Nancy Johnson acted like a supervisor even though she was not.  She was given free rein to be wherever she wanted to be which, unfortunately, was many times in Camille Wilson's area of work, leaving Camille Wilson intimidated by Nancy Johnson.

**37.** Camille Wilson reported Nancy Johnson's intimidating, cocky, stalking and verbal derogatory racial discrimination, name calling including, but not limited to, black bitch and lying whore, as well as many other harassing and threatening inappropriate disruptive behaviors from Nancy Johnson in the Rainbow Babies & Children Respiratory Department directly to supervisor Kathy Deakins on numerous occasions.

**38.** In January 2010 when it began, Ms. Deakins asked Camille Wilson not to give her any more emails but instead wanted everything verbally for reasons that now make sense.

**39.** Camille Wilson did not have a computer or chair at work.

**40.** University workers Bridget Marie Hill and the University Hospitals Police Department were repeatedly told about harassing retaliatory conduct by Nancy Johnson.

41.     Kathy Deakins kept telling Camille Wilson that she is giving her complaints to the proper authorities, but no one contacted her and eventually the University Hospitals Police Department went to Ms. Deakins and Nancy's offices and told them that Camille Wilson spoke with them and made a complaint.

42.     Instead of addressing the seriousness of the complaints, Ms. Deakins told Wilson that she is going to need an attorney when she arrived on UH premises, and they would be meeting with UH attorney, Cindy Beattie.

43.     Additionally, John Gallagher, the coordinator in the RBC Peds Respiratory Department was also aware of the harassment from Nancy Johnson.

44.     During this time period, Camille Wilson tried to get out of the Department by applying for other positions, but she could never a position.

45.     She frequently reported to EAP Kurt Neumann, asking for help; nothing happened.

46.     Ms. Wilson also shared her concerns with the CEO, Mr. Zenti.

## COUNT ONE
## Hostile Work Environment

47.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 46 of the Amended Complaint as if fully rewritten herein.

48.     During her employment, Camille Wilson was subject to offensive and harassing conduct by Johnson, as known by Deakins, based upon her race.

49.     During her employment with University Hospitals, Wilson was subjected to offensive and harassing conduct by the Defendants based on her perceived disabilities.

50.     University Hospitals knew or should have known of the harassing conduct by Johnson.

**51.**     University Hospitals condoned, tolerated and ratified this harassing conduct.

**52.**     This harassing conduct was severe and/or pervasive.

**53.**     This harassing conduct was very offensive to Wilson.

**54.**     Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Wilson.

**55.**     Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for a reasonable person similarly situated to Wilson.

**56.**     White non-disabled employees similarly situated were not so affected.

**57.**     As a direct and proximal result of Defendants' misconduct, Wilson suffered damages in an amount to be determined at trial.

**COUNT TWO**
**Disability Discrimination – Deakins and Johnson**

**58.**     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 57 of the Amended Complaint as if fully rewritten herein.

**59.**     Defendants willfully and knowingly took advantage of Wilson's perceived disability in order to harass her into termination.

**60.**     Wilson was regularly harassed and ridiculed by Nancy Johnson on the basis of her perceived disability.

**61.**     Wilson contends that Deakins' decision to force her to a mental examination was meant to harass and intimidate her based on a perceived disability.

**62.**     Defendants' disability harassment against Wilson was sufficiently severe and pervasive to affect the terms, conditions and privileges of her employment with UH.

**63.**     The disability harassment of Wilson created a hostile and/or abusive work environment for any reasonable person similarly situated to Wilson.

8

64.     As a direct and proximal result of Defendants' misconduct, Wilson suffered and will continue to suffer damages in an amount to be determined at trial.

## COUNT THREE
### Interference with Exercise of Rights
### in Violation of the Family Medical Leave Act

65.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 64 of the Amended Complaint as if fully rewritten herein.

66.     University Hospitals is a covered employer under the FMLA.

67.     Wilson requested to take leave under the FMLA after being hurt outside of work and needing time to recover.

68.     At the time Wilson requested FMLA leave, she was a qualified and eligible employee under the FMLA.

69.     Wilson believes that one of the reasons that she was targeted for RIF termination was because of her exercise of FMLA leave because she took eight (8) weeks off in late 2014 and early 2015.

70.     Defendants unlawfully interfered with Wilson's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

71.     As a direct and proximal result of Defendants' wrongful conduct with respect to FMLA leave, Wilson is entitled to all damages provided for in 29 U.S.C. § 2617 including, but not limited to, liquidated damages, costs, expenses, and reasonable attorney's fees.

## COUNT FOUR
### Wrongful Retaliatory Discharge

72.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 71 of the Amended Complaint as if fully rewritten herein.

73.     During her employment at University Hospitals, Wilson complained to Deakins repeatedly as well as Human Resources and University Hospitals' Police and anyone who would listen bout discriminatory misconduct in the workplace.

74.     She also complained about perceived disability and racial harassment and retaliation in the workplace.

75.     After complaining to University Hospitals for years without any meaningful results, the Defendants, and particularly Deakins, terminated Wilson as part of an unlawful reduction in force.

76.     Wilson's termination constitutes unlawful retaliation by the Defendants in violation of law.

77.     Pursuant to Revised Code § 4112 and federal law, it is unlawful discriminatory practice to terminate in any manner against any person because that person has opposed any unlawful discriminatory practice.

78.     As a direct and proximal result of Defendants' misconduct, Wilson has suffered damages and will continue to suffer damages in an amount to be determined at trial.

## COUNT FIVE
### Disability Discrimination – University Hospitals

79.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 78 of the Amended Complaint as if fully rewritten herein.

80.     The Defendants perceived Camille Wilson as having a mental impairment that substantially limited one or more of her major life activities including, but not limited to, thinking, concentrating, working and interacting with others.

81.     The Defendants manifested this perceived disability of Camille Wilson by ordering her to take a "Fitness for Duty" examination in late 2014, which had no reasonable basis in law or fact, and which she passed without any difficulty.

82.     Camille Wilson performed the essential functions of her job without reasonable accommodation.

83.     Camille Wilson suffered an adverse employment action when the Defendants forced her to go through this testing and then eventually terminate her on a false RIF allegation.

84.     Defendants perceived her to have a mental disability.

85.     Upon information and belief, Camille Wilson was replaced by individuals without a disability or without a perceived disability who were treated more favorably than Camille Wilson.

86.     Camille Wilson maintains that Defendants discriminated against her on the basis of a perceived disability or regarding her as disabled in violation of the Americans with Disabilities Act in Ohio Revised Code Chapter 4112.

87.     As a direct and proximal result of this unlawful discriminatory misconduct, Wilson suffered emotional distress and humiliation; lost wages, benefits and salary; incurred reasonable attorney's fees and costs of litigation; and has been otherwise injured, some of which will continue to accrue indefinitely in the future.

## COUNT SIX
### Violation of Ohio Public Policy

88.     Plaintiff realleges all of the allegations contained in Paragraphs 1 through 87 of the Amended Complaint as if fully rewritten herein.

89. Camille Wilson believes that there was a clear public policy, both manifested in state and federal law and in the common law prohibiting race harassment or retaliation, disability harassment or retaliation, and FMLA retaliation.

90. Camille Wilson contends that she was discharged under circumstances that would jeopardize Ohio's public policy as well as federal public policy in prohibiting such misconduct.

91. Camille Wilson maintains that her dismissal was motivated by the conduct relating to the important federal and state public policy.

92. The Defendants lack overriding legitimate business justification for the dismissal which was designed to rid University Hospitals of a troublesome employee whose only concern was to stop being harassed by an ally and friend of Kathy Deakins.

93. As a result of the violation of Ohio public policy, Camille Wilson has been damaged in an amount to be determined at trial.

**WHEREFORE**, the Plaintiff, Camille Wilson, respectfully prays this Court grants her (a) lost pay and future lost wages and benefits in excess of $75,000.00; (b) compensatory damages in an amount in excess of $75,000.00 for emotional distress and damages as permitted under Revised Code § 4112 *et seq*.; (c) an amount in excess of $75,000.00 for punitive damages per count; (d) reasonable attorney's fees, costs and expenses; (e) prejudgment and post-judgment interest; (f) any and all statutory, equitable and legal relief as may be just and appropriate.

Respectfully submitted,


MICHAEL P. HARVEY CO., L.P.A.


/s/Michael P. Harvey
Michael P. Harvey, Esq. (#0039369)
311 Northcliff Drive
Rocky River, Ohio  44116
Office: (440) 356-9108
Cell:    (440) 570-2812
Email: MPHarveyCo@aol.com
*Attorney for Plaintiff*


## JURY DEMAND

The Defendants respectfully give notice to all parties and counsel of record that they

request a jury on all claims and issues so triable before a jury with the maximum number of

jurors allowed.

/s/Michael P. Harvey, Esq.
Michael P. Harvey, Esq. (#0039369)

13

## CERTIFICATE OF SERVICE

The undersigned herby certifies that on May 6, 2016, a copy of the foregoing AMENDED

COMPLAINT has been forwarded via the Court's electronic filing system to:

Liana R. Hollingsworth
David A. Campbell
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Email: lrhollingsworth@vorys.com
Email: dacampbell@vorys.com
***Attorneys for Defendant***

Nancy Johnson
c/o University Hospitals
11100 Euclid Avenue
Cleveland, Ohio 44106

Kathy Deakins
c/o University Hospitals
11100 Euclid Avenue
Cleveland, Ohio 44106

                                    /s/Michael P. Harvey, Esq.
                                    Michael P. Harvey, Esq. (#0039369)
                                    ***Attorney for Plaintiff***

MPH/rlb